UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Joseph Anthony Favors,                                File No. 18-cv-3187 (JNE/LIB)

        Plaintiff,

   v.                                                          **REPORT AND RECOMMENDATION**

Chase Bank, et al.,

        Defendants.

---

This matter comes before the undersigned United States Magistrate Judge upon Defendant Chase Bank's (hereinafter "Defendant")[1] Motion to Dismiss, [Docket No. 11], and upon referral from the Honorable Joan N. Ericksen. (Order of Reference [Docket No. 17]).

For the reasons discussed herein, it is recommended that the Defendant's Motion to Dismiss, [Docket No. 11], be **GRANTED**.

**I.    Background**[2]

At some unspecified point, Plaintiff opened an account with Defendant, and at some later unspecified point, Plaintiff became delinquent on said account. (See, Compl. [Docket No. 1]). At some further unspecified time, Plaintiff asserts that Defendant engaged Alltran Financial LP to collect the debt owed by Plaintiff. (Id. at 6–7).[3]

---

[1] While Plaintiff named as Defendants Chase Bank, "Mrs. W. White," and "Alltran Financial LP," the present Motion is brought on behalf of only Defendant Chase Bank. (See, Def.'s Mot. [Docket No. 11]). Accordingly, to the extent the Court refers to "Defendant" in the present Report and Recommendation, it refers to only Defendant Chase Bank unless otherwise indicated.

[2] Although Plaintiff's Complaint is difficult to discern, for the purposes of the present Motion to Dismiss under Rule 12(b)(6), the Court accepts the facts alleged in Plaintiff's Complaint, [Docket No. 1], as true and construes them in the light most favorable to Plaintiff. See, Smithrud v. City of St. Paul, 746 F.3d 391, 397 (8th Cir. 2014).

[3] The Court notes that Plaintiff's Complaint makes several references to attached exhibits but there are in fact no exhibits attached to Plaintiff's Complaint.

Plaintiff alleges that on March 8, 2018, Alltran Financial sent Plaintiff a "Settlement Offer" to settle the entire debt owed for a discounted amount of "3 equal payments of $239.53." (Id. at 7, 40).

On March 25, 2018, Plaintiff sent Defendant a "'Request for Validation of Debt[.]" Plaintiff's March 25, 2018, "Request for Validation of Debt" letter provided that:

> To Whom It May Concern: This letter is regarding account #4266-8414-4621-2365, which you claim I owe '$4,790.66.' This is a formal notice that your claim is disputed. I am requesting validation, made pursuant to the Fair Debt Collection Practices Act and the Fair Credit Reporting Act, along with the corresponding local state laws. Please note that I am requesting validation; that is <u>competent</u> evidence <u>bearing my signature</u> showing that I have (or ever had) some contractual obligation to pay you. Please also be aware that any negative mark found on my credit reports (including Experian, Transunion and Equifax) from your company or any company you represent, for a debt that I don't owe, is a violation of the FCRA & FDCPA; therefore if you cannot validate the debt, you must request that all credit reporting agencies delete the entry. Failure to respond within 30 days of receipt of this certified letter may result in small claims legal action against your company at my local venue. I would be seeking a minimum of $1,000 in damages per violation for (1) Defamation; (2) Violation of Fair Debt Collection Practices Act (including but not limited to Section 807-8); (3) Violation of Fair Credit Reporting Act (including but not limited to Section 623-b), and more.

(Id. at 9–10)(reproduced as pled in Complaint).

On March 27, 2018, Plaintiff mailed to Defendant Alltran Financial the first payment of the "settlement offer" which he alleges indicated his "accepting the 'Settlement Offer,'" and thereby taking the position that he was reducing his debt owed "to a balance of only $479.06." (Id.).

Thereafter, at dates not specified by Plaintiff, "on at least two separate occasions to at least three consumer reporting agencies," Defendant reported that "Plaintiff was behind in payments and owed Defendant, Chase Bank. '$4,790.66' regarding credit card account number 4266-8414-4621-2365." (Compl., [Docket No. 1], at 6).

On April 19, 2018, Plaintiff received a response from Defendant Chase Bank. (Id. at 10). In its response letter, Defendant Chase Bank informed Plaintiff that it had sent the requested documents, and it provided Plaintiff with Defendant's contact information. (Id.).

On April 22, 2018, Plaintiff sent Defendant a "'Second Request for Validate of Debt' letter . . . regarding the Billing Statement from Defendant stating Plaintiff owed '$4,790.66' on account number 4266-8414-4621-2365." (Id. at 11). In his letter, Plaintiff informed Defendant that he found their previous response inadequate, that he was giving Defendant "a final goodwill attempt to have [Defendant] clear up this matter," that he still disputed the debt, and that if Defendant failed to adequately reply, Plaintiff would initiate litigation. (Id. at 10–12).

On April 30, Defendant contacted "Plaintiff's place of employment and spoke to Mary Ward . . . regarding collection of this alleged debt." (Id. at 42).[4]

On July 18, 2018, Plaintiff received a copy of the Chase Slate Card Member Agreement from Defendant Chase Bank regarding the account Plaintiff already had open with Defendant Chase Bank. (Id. at 15). Plaintiff alleges he was previously unaware such a document existed, and he has never signed such a document. (Id. at 15–16).

On the basis of those allegations, Plaintiff alleges six causes of action. Count 1 of Plaintiff's Complaint asserts "six violation[s] of the Fair Debt Collection Practices Act ("FDCPA"), Section 1681s-2(a)(7)(A)(i); and six violations of the Fair Debt Collection Practices Act ("FDCPA"), Section 1681s-2(a)(1)(A)"[5] based on Plaintiff's allegations that Defendant provided "reporting agencies" with negative information which Defendant had reason to believe

---

[4] Plaintiff's place of employment is not specified in his Complaint, and he does not further address any factual allegations relative to his employment. (See, Compl. [Docket No. 1]).

[5] Although Plaintiff labels these allegations as violations of the Fair Debt Collections Practices Act, his statutory cites, as well as, his, discussion of those allegations all reference the Fair Credit Reporting Act. (See, Compl., [Docket No. 1], at 3–9) Liberally construing Plaintiff's assertions in his favor, the Court will analyze his claims as arising under and regarding provisions of the Fair Credit Reporting Act.

was false, and his allegations that Defendant did not provide Plaintiff with notice of that negative information. (See, Compl., [Docket No. 1], at 3–9). Count 2 of Plaintiff's Complaint asserts "six violations of the Fair Debt Collections Practices Act ("FDCPA"), Section 1692e(8)" based on Plaintiff's allegations that Defendant failed to inform the reporting agencies that the debt underlying the present case was disputed after Plaintiff provided Defendant with a letter disputing said debt. (See, Compl., [Docket No. 1], at 9–15). Count 3 and Count 6 of Plaintiff's Complaint assert state law breach of contract claims based on the circumstances surrounding the Chase Slate Card Member Agreement. (See, Compl., [Docket No. 1], at 15–27, 36–44). Count 4 of Plaintiff's Complaint asserts "two violations of the Fair Credit Billing Act ('FCBA'), Section §1666a(3)(B)(ii)" based on Plaintiff's allegations that Defendant did not provide Plaintiff with a "written explanation" as to the reasons Defendant found the debt to be proper. (See, Compl., [Docket No. 1], at 27–34). Count 5 of Plaintiff's Complaint asserts a "violation of the Fair Credit Billing Act ('FCBA'), Section §1666a" based on Plaintiff's allegations that Defendant failed to comply with the FCBA's and Chase Card Member Agreement's alleged requirement that upon receiving a communication disputing a debt Defendant must, within thirty days, inform the sender it has received the letter, and within ninety days, must either correct the error or explain why it is not in error. (See, Compl., [Docket No. 1], at 35–36).

## II. Defendant's Motion to Dismiss. [Docket No. 11].

Defendant's Motion to Dismiss, [Docket No. 11], seeks an Order of this Court dismissing all claims asserts against it by Plaintiff. Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted, and therefore, according to Defendant, Plaintiff's Complaint should be dismissed. For his part, Plaintiff contends that Defendant's arguments are meritless,

and his Complaint sufficiently alleges violations of the cited Federal statutes, as well as, a state law breach of contract claim. (See, Plf.'s Mem. [Docket No. 23]).

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the non-moving party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67).

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice to state a claim to relief that is plausible on its face." Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010) (citations and internal quotation marks omitted). In addition to accepting all of the factual allegations in the complaint as true, courts considering a Rule 12(b)(6) motion to dismiss draw all reasonable inferences in the plaintiff's favor, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Carton, 611 F.3d at 454 (citations omitted); see, Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

5

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81. Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

In addition:

A violation of the FDCPA is reviewed utilizing the unsophisticated-consumer standard which . . . protects the uninformed or naïve customer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretation of collection attempts. The unsophisticated consumer test is a practical one, and statements that are merely susceptive of an ingenious misreading do not violate the FDCPA.

Heroux v. Callidus Portfolio Mgmt. Inc., No. 17-cv-5132 (DSD/HB), 2018 WL 2018069, *4 (D. Minn. May 1, 2018) (citations and quotations omitted).

Generally, in evaluating a complaint, materials outside the pleadings cannot be considered on a motion to dismiss. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court "may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).

While the Court is required to construe the content with Plaintiff's pleadings liberally as he is proceeding pro se, Plaintiff is nevertheless bound to comply with applicable procedural and substantive law. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

### B. Analysis

As noted above, Plaintiff claims that (1) Defendant violated "Section 1681s-2(a)(7)(A)(i)" and "Section 1681s-2(a)(1)(A)" of the Fair Credit Reporting Act by providing "reporting agencies" with negative information which Defendant had reason to believe was false and by failing to provide Plaintiff with notice of that negative information; (2) Defendant violated "Section 1692e(8)" of the Fair Debt Collection Practices Act by failing to inform the reporting agencies that the debt underlying the present case was disputed after Plaintiff provided Defendant with a letter disputing said debt; (3) Defendant violated "Section §1666a(3)(B)(ii)" of "the Fair Credit Billing Act ('FCBA')" by failing to provide Plaintiff with a "written explanation" as to the reasons Defendant found the underlying debt to be proper; (4) Defendant violated "Section §1666a" on the Fair Credit Billing Act by failing to comply with the FCBA's and Chase Card Member Agreement's alleged requirement that upon receiving a communication disputing a debt Defendant must, within thirty days, inform the sender it has received the letter, and within ninety days, must either correct the error or explain why it is not in error; and (5) Defendant breached a contract between the parties. (See, Compl., [Docket No. 1], at 3–36).

### i. Count 1: Violations of the Fair Credit Reporting Act

Count 1 of Plaintiff's Complaint asserts Defendant violated "Section 1681s-2(a)(7)(A)(i)" and "Section 1681s-2(a)(1)(A)" of the Fair Credit Reporting Act (hereinafter "FRCA") by providing "reporting agencies" with negative information which Defendant had reason to believe was false and failing to provide Plaintiff with notice of that negative information. (See, Compl., [Docket No. 1], at 3–9). Title 15 U.S.C. § 1681s-2(a)(1)(A) provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is

7

inaccurate." In a similar vein, 15 U.S.C. § 1681s-2(a)(7)(A)(i) provides that "[i]f any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency" as defined by statute "furnishes negative information to such an agency regarding extending credit extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer."

However, Plaintiff's claims pursuant to 15 U.S.C. § 1681s-2(a)(1)(A) and 15 U.S.C. § 1681s-2(a)(7)(A)(i) fail as a matter of law because 15 U.S.C. § 1681s-2(a) does not provide for a private cause of action. See, 15 U.S.C. § 1681s-2(c); 15 U.S.C. § 1681s-2(d) (providing that subsection (a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title"); Oberg v. Shapiro, No. 15-cv-3678 (PJS/SER), 2016 WL 4501354, at *8 (D. Minn. Aug. 1, 2016), report and recommendation adopted by 2016 WL 4497754 (D. Minn. Aug. 26, 2016); Bohner v. LHR, Inc., No. 10-cv-4621 (DWF/LIB), 2012 WL 6755275, at *6 (D. Minn. Dec. 10, 2012), report and recommendation adopted by 2013 WL 25073 (D. Minn. Jan. 2, 2013); Thulin v. EMC Mortg. Corp., No. 6-cv-3514 (RHK/JSM), 2007 WL 3037353, at *6 (D. Minn. Oct. 16, 2007). Because there is no private cause of action for violations of 15 U.S.C. § 1681s-2(a)(1)(A) or 15 U.S.C. § 1681s-2(a)(7)(A)(i), Plaintiff cannot maintain a cause of action for any violation of 15 U.S.C. § 1681s-2(a)(1)(A) or 15 U.S.C. § 1681s-2(a)(7)(A)(i). Accordingly, even liberally construing his Complaint and drawing all reasonable inferences in his favor, Plaintiff has failed to state a claim upon which relief can be granted for any violation of 15 U.S.C. § 1681s-2(a)(1)(A) or 15 U.S.C. § 1681s-2(a)(7)(A)(i).

Therefore, to the extent Defendant's Motion seeks a dismissal of Count 1 of Plaintiff's Complaint, [Docket No. 1], the Court recommends that Defendant's Motion to Dismiss, [Docket No. 11], be **GRANTED with prejudice**.

### ii. Count 2: "six violations of the Fair Debt Collections Practices Act ("FDCPA"), Section 1692e(8)"

Count 2 of Plaintiff's Complaint asserts "six violations of the Fair Debt Collections Practices Act ("FDCPA"), Section 1692e(8)" based on Plaintiff's allegations that Defendant failed to inform the reporting agencies that the debt underlying the present case was disputed after Plaintiff provided Defendant with a letter disputing said debt. (See, Compl., [Docket No. 1], at 9–15). Defendant argues Count 2 of Plaintiff's Complaint fails because the relevant provision of the FDCPA applies only to "debt collectors," and it is not a "debt collector" as defined by the FDCPA. (See, Def.'s Mem., [Docket No. 13], at 9–13).

As relevant here, the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And it specifically provides as an example of such conduct, "[c]ommunicating or threatening to communication to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

The FDCPA defines a "debt collector" as (1) "any person who uses any instrumental of interstate commerce or the mails in any business the principal purpose of which is the collection of any debt" or in the alternative, (2) any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This definition does include "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third persons is collecting

9

or attempting to collect such debts." 15 U.S.C. § 1692a(6). However, the FDCPA specifically excludes from the definition of "debt collector . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person." 15 U.S.C. § 1692a(6)(F). The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that" person "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

In the present case, even accepting as true all facts in the Complaint and drawing all reasonable inferences in his favor, Plaintiff has failed to allege sufficient facts upon which a reasonable inference could be drawn that Defendant is a "debt collector" as that term is defined by the FDCPA. The first definition of a "debt collector" requires a demonstration of facts that Defendant's principal business activity is debt collection. See, A.W. v. Preferred Platinum Plan, Inc., 923 F. Supp. 2d 1168, 1171 (D. Minn. 2013). It is insufficient to assert simply that one of a defendant's business activities is debt collection; it must be the defendant's principal business activity. See, Tusen v. M&T Bank, No. 16-cv-4339 (PAM/KMM), 2017 WL 4990527, at *2 (D. Minn. Oct. 31, 2017). Plaintiff fails to even allege that Defendant's "principal purpose" or principal business activity is debt collection. (See, Compl. [Docket No. 1]).

Plaintiff contends that Defendant is a debt collector under the second clause of 15 U.S.C. § 1692a(6) as an entity which "regularly collects or attempts to collect debts, indirectly or directly." (Compl., [Docket No. 1], at 25). In support of this contention, Plaintiff asserts that (1) Defendant's name is on the bill he receives each month and (2) "Cardmember Services" is

simply Defendant's "own in-house debt collections department." (Compl., [Docket No. 1], at 25). The Court finds these arguments unpersuasive.

Although Plaintiff references the definition of "debt collector" as defined by the FDCPA and argues that Defendant fits into the second clause of that definition, he overlooks the fact that the second clause of the "debt collector" definition refers to any person who "regularly collects or attempts to collect, directly or indirectly, <u>debts owed or due or asserted to be owed or due another</u>" 15 U.S.C. § 1692a(6) (emphasis added); <u>Cf.</u> Plf.'s Mem., [Docket No. 1], at 25) (omitting "debts owed or due or asserted to be owed or due another."). Plaintiff fails to assert <u>any</u> factual allegation that Defendant's actions as described in Plaintiff's Complaint were taken by Defendant in an attempt to collect a debt owed or due or asserted to be <u>owed or due another</u>. (<u>See</u>, Compl. [Docket No. 1]). Rather, Plaintiff specifically alleges that Defendant is attempting to collect its "own debt for" itself. (Compl., [Docket No. 1], at 24).

Consequently, the FDCPA specifically excludes from the definition of "debt collector . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person." 15 U.S.C. § 1692a(6)(F). In the present case, Plaintiff's Complaint makes abundantly clear that Plaintiff's debt underlying the present action originated with Defendant, and therefore, even to the extent Plaintiff's Complaint could be liberally construed as asserting facts demonstrating a basis upon which it could be reasonably inferred that Defendant was itself attempting to collect a debt, under the circumstances of Plaintiff Complaint, Defendant would still be excluded from the definition of "debt collector."

Thus, even liberally construing the factual allegations in Plaintiff's Complaint and drawing all reasonable inferences in his favor, Plaintiff fails to allege sufficient facts

11

demonstrating Defendant is a "debt collector" as that term is defined by the FDCPA.[6] Rather, based on the statutory definition and the pleading now before the Court, Defendant appears to fit only the definition of a "creditor, or "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4).

Therefore, to the extent Defendant's Motion seeks a dismissal of Count 2 of Plaintiff's Complaint, [Docket No. 1], the Court recommends that Defendant's Motion to Dismiss, [Docket No. 11], be **GRANTED without prejudice**.

### iii. Count 4: "two violations of the Fair Credit Billing Act ("FCBA"), Section §1666a(3)(B)(ii)" and Count 5: "violation of the Fair Credit Billing Act ("FCBA"), Section §1666a

Count 4 of Plaintiff's Complaint asserts "two violations of the Fair Credit Billing Act ("FCBA"), Section §1666a(3)(B)(ii)"[7] based on Plaintiff's allegations that Defendant did not provide Plaintiff with a "written explanation" as to the reasons Defendant found the debt underlying the present case to be proper. (See, Compl., [Docket No. 1], at 27–34). Count 5 of Plaintiff's Complaint asserts a "violation of the Fair Credit Billing Act ("FCBA"), Section §1666a" based on Plaintiff's allegations that Defendant failed to comply with the FCBA's alleged requirement that upon receiving a communication disputing a debt Defendant must, within thirty days, inform the sender it has received the letter, and within ninety days, must either correct the error or explain why it is not in error. (See, Compl., [Docket No. 1], at 35–36).

---

[6] The Court notes that there is an instance in Plaintiff's Complaint where Plaintiff references "Defendant, Chase Bank, (a 'debt collector')"; however, this is mere a legal conclusion couched as fact without any factual assertion or discussion as to the factual reasons Plaintiff believes Defendant to be a 'debt collector." (Compl., [Docket No. 1], at 14). This is the exact type of legal conclusion couched as fact against which Iqbal warns the Court and which this Court is not bound to accept as true. See, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010).

[7] The Court notes that there is not a "Section 1666a(3)(B)(ii)" to the FCBA; however, the text of Plaintiff's Complaint makes evident that he is referring to 15 U.S.C. 1666 and § 1666a of the FCBA. (See, Compl. [Docket No. 1]). Although Plaintiff does not cite to an actual provision of the FCBA, the Court will liberally construe his pro se Complaint in his favor as asserting a claim pursuant to § 1666a of the FCBA.

Defendant contends that Plaintiff's claim under the FCBA must fail because Plaintiff fails to allege any actionable "notice" as required by the FCBA.

The portions of the FCBA under which Plaintiff seeks to assert a claim have been described as follows:

> 15 U.S.C. § 1666, et seq., provides a procedure through which a debtor can dispute statements containing a billing error issued by a creditor. Pinner v. Schmidt, 805 F.2d 1258, 1264 (5th Cir.1986). If a debtor sends a creditor a written billing-error notice in accordance with the FCBA's requirements and if the creditor receives this notice within sixty days of transmitting the challenged billing statement, the FCBA imposes two separate obligations upon the creditor: the creditor must send a written acknowledgment of the notice within thirty days and must investigate the matter and either correct the account or give written explanation of the disputed charge within ninety days. See 15 U.S.C. § 1666; American Exp. Co. v. Koerner, 452 U.S. 233, 236, 101 S.Ct. 2281, 68 L.Ed.2d 803 (1981); Pinner, 805 F.2d at 1264. To trigger these obligations, a valid FCBA billing error notice must meet the following requirements: (1) the debtor identifies [his] name and account number, (2) the debtor indicates [his] belief that the statement contains a billing error and the amount of such billing error, and (3) the debtor explains [his] belief that the statement contains a billing error. See 15 U.S.C. § 1666(a).

Esquibel v. Chase Manhattan Bank U.S.A, N.A., 276 F. App'x 393, 396 (5th Cir. 2008) (unpublished opinion) (internal quotations omitted).

As another court has explained:

> Under the [FCBA], the duties of a creditor to correspond with an obligor and seek to resolve any billing differences are triggered only by receipt of written notice in which the consumer:
>
>> (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,
>> (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and
>> (3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error.
>
> 15 U.S.C. §§ 1666(a)(1), (2), and (3). Similarly, 12 C.F.R. § 226.13(b), the applicable regulation interpreting 15 U.S.C. § 1666(a), requires written notification to the creditor identifying the obligor by name and account number, and further mandates that such notice to the extent possible, indicate the

consumer's belief and the reasons for the belief that a billing error exists, and the type, date, and amount of the error.

Conn-Burnstein v. Saks Fifth Ave. & Co., 85 F. App'x. 430, 431 (6th Cir. 2003) (unpublished opinion) (internal quotations omitted).

Thus, to maintain any claim under this "billing error" provision of the FCBA, as Plaintiff seeks to do in Count 4 and Count 5 of his Complaint, Plaintiff's Complaint must as a threshold requirement allege sufficient facts upon which a reasonable inference can be made that he sent Defendant a written notice that satisfies the specific requirements of 15 U.S.C. § 1666(a). In the present case, Plaintiff has failed to do so.

As previously observed, Plaintiff asserts factual allegations indicating he sent two written correspondence to Defendant. First, Plaintiff sent a March 25, 2018, "Request for Validation of Debt" letter which reads as follows:

> To Whom It May Concern: This letter is regarding account #4266-8414-4621-2365, which you claim I owe '$4,790.66.' This is a formal notice that your claim is disputed. I am requesting validation, made pursuant to the Fair Debt Collection Practices Act and the Fair Credit Reporting Act, along with the corresponding local state laws. Please note that I am requesting validation; that is competent evidence bearing my signature showing that I have (or ever had) some contractual obligation to pay you. Please also be aware that any negative mark found on my credit reports (including Experian, Transunion and Equifax) from your company or any company you represent, for a debt that I don't owe, is a violation of the FCRA & FDCPA; therefore if you cannot validate the debt, you must request that all credit reporting agencies delete the entry. Failure to respond within 30 days of receipt of this certified letter may result in small claims legal action against your company at my local venue. I would be seeking a minimum of $1,000 in damages per violation for (1) Defamation; (2) Violation of Fair Debt Collection Practices Act (including but not limited to Section 807-8); (3) Violation of Fair Credit Reporting Act (including but not limited to Section 623-b), and more.

(Compl., [Docket No. 1], at 9–10)(reproduced as pled in Complaint).

On April 19, 2018, Plaintiff received a response from Defendant. (Id. at 10). In its response letter, Defendant informed Plaintiff that it had sent the requested documents, and it provided Plaintiff with Defendant's customer service contact information. (Id.).

On April 22, 2018, Plaintiff sent Defendant a "'Second Request for Validate of Debt' letter . . . regarding the Billing Statement from Defendant stating Plaintiff owed '$4,790.66' on account number 4266-8414-4621-2365." (Id. at 11). In this letter, Plaintiff informed Defendant that he found their previous response inadequate, that he was giving Defendant "a final goodwill attempt to have [Defendant] clear up this matter," that he still disputed the debt, and that if Defendant failed to adequately reply, Plaintiff would initiate litigation. (Id. at 10–12).

To constitute a written notice that satisfies the specific requirements of 15 U.S.C. § 1666(a), the written correspondence must first identify the name and account number of the obligor, and it is evident from the Complaint that Plaintiff's written correspondence to Defendant identified himself, as well as, the account number which the correspondence was regarding.

However, to qualify as a proper written notice under 15 U.S.C. § 1666(a) the notice must also indicate the plaintiff's belief that the statement contains a "billing error" and the amount of such "billing error," as well as, the reasons for the plaintiff's belief that the statement contains a "billing error." 15 U.S.C. § 1666(a)(1–3). Plaintiff's written correspondence to Defendant—as described by Plaintiff and as reproduced by Plaintiff in his Complaint—do not contain any specific references to a billing error. See, 15 U.S.C. 1666(b).[8] Rather, Plaintiff's written correspondence to Defendant are "Request for Validation of Debt" disputing the entirety of the

---

[8] Title 15 U.S.C. § 1666(b) defines a "billing error" as "(1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement"; "(2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof"; "(3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction"; "(4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor"; or "(5) A computation error or similar error of an accounting nature of the creditor on a statement."

15

debt owed as opposed to any billing error. A validation request, such as those sent by Plaintiff to Defendant, does not constitute a "billing error" as required by § 1666(a). See, Wilson v. Chase Home Fin., No. 11-cv-7067 (RGK/JEM), 2011 WL 5173022, at *3 (C.D. Cal. Oct. 28, 2011) (declining to treat a "request for validations of a debt" as a "billing error" under § 1666); Hill v. Chase Bank USA, N.A., No. 2:07-cv-82 (RM), 2010 WL 107192, at *6 (N.D. Ind. Jan. 6, 2010) (finding that a request for validation of an entire debt is not a "billing error" as defined by § 1666); Daneshrad v. Cohen & Slamowitz, LLP, No. 5-cv-2662 (SJF/ETB), 2009 WL 637888, at *9 (E.D.N.Y. Mar. 9, 2009) (declining to recognize validation of debt request as a "billing error" as defined by § 1666); Williams v. Cawley, No. 3-cv-10189 (BC), 2005 WL 1030338, at *11 (E.D. Mich. Apr. 26, 2005) (finding that obligor failed to comply with content requirement of FCBA where communication did not dispute specific transaction in account but merely sought verification of entire debt). Because Plaintiff has failed to allege sufficient facts demonstrating that he provided Defendant with a "written billing error notice" as defined and required by the FCBA, Plaintiff has failed to demonstrate that Defendant had any obligation under the FCBA to respond to Plaintiff pursuant to the FCBA. See, Neiman v. Chase Bank, USA, N.A., No. 13-cv-8944, 2014 WL 3705345, at *3 (N.D. Ill. July 25, 2014) ("In order to trigger the creditor's statutory duties under 1666(a), the obligor must send the creditor 'a written notice' of the alleged billing error" as that term is defined by the FCBA).

Even liberally construing Plaintiff's Complaint and drawing all reasonable inferences in his favor, Plaintiff has failed to allege sufficient facts demonstrating that he provided Defendant with written notice of a "billing error" as defined by the FCBA. Accordingly, Plaintiff has failed to state a claim upon which relief could be granted for any violation of the Fair Credit Billing Act.

Moreover, even assuming solely for the sake of argument that Plaintiff's letter could be construed as written notice of a "billing error," Plaintiff still fails to state a claim upon which relief could be granted for any violation of the Fair Credit Billing Act. Pursuant to the FCBA, "[i]f the obligor fails to send the written notice within 60 days of the creditor's transmission of a statement with the error, the creditor's duties under § 1666(a)," such as responding in a statutorily specific amount of time, "are not triggered." Neiman v. Chase Bank, USA, N.A., No. 13-cv-8944, 2014 WL 3705345, at *3 (N.D. Ill. July 25, 2014) (citing Hill v. Chase Bank USA, N.A., No. 2:07-cv-82 (RM), 2010 WL 107192, at *6 (N.D. Ind. Jan. 6, 2010)); 15 U.S.C. § 1666 ("[i]f a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of a consumer credit, receives . . . a written notice" as defined by statute "the creditor shall" respond as directed by the FCBA) (emphasis added).

In the present case, Plaintiff alleges that he sent his first "Request for Validation of Debt" letter on March 25, 2018, and he further alleges that he sent his "Second Request for Validation of Debt" letter on April 22, 2018. (Compl., [Docket No. 1], at 9, 11). As previously discussed, however, Plaintiff does not—in neither his Complaint nor his "Requests for Validation"—identify the "billing error" with which he takes issue, and therefore, he likewise fails to provide the Court with the date he received the Defendant's transmission of a statement with an alleged error. By failing to assert any factual allegation indicating when Plaintiff received transmission of a statement with an alleged billing error, Plaintiff has likewise failed to assert any factual allegations indicating that he sent written notice within sixty days of said transmission. Therefore, even assuming solely for the sake of argument that Plaintiff's letter could be

17

construed as written notice of a "billing error," Plaintiff still fails to allege sufficient facts demonstrating he provided said written notice within the time frame required by the FCBA.

Thus, even liberally construing the factual allegations in Plaintiff's Complaint and drawing all reasonable inferences in his favor, Plaintiff fails to allege sufficient facts to state claims upon which relief could be granted for any violation of the Fair Credit Billing Act.

Therefore, to the extent Defendant's Motion seeks a dismissal of Count 4 and Count 5 of Plaintiff's Complaint, [Docket No. 1], the Court recommends that Defendant's Motion to Dismiss, [Docket No. 11], be **GRANTED without prejudice**.

### iv. Counts 3 and 6: Plaintiff's State Law Breach of Contract Claims

Remaining before the Court as part of Plaintiff's Complaint, [Docket No. 1], are Plaintiff's state law claims asserting breach of contract claims based on Plaintiff's allegations that Defendant breached the terms of the Chase Slate Card Member Agreement and "Settlement Offer." (See, Compl., [Docket No. 1], at 15–27, 36–44). Defendant's Motion to Dismiss, [Docket No. 11], seeks an Order of this Court dismissing with prejudice Plaintiff's state law breach of contract claims based on a review of the merits of those claims. (See, Def.'s Mem., [Docket No. 13], at 13–16, 18).

Supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) by a federal court over state law claims may be exercised at the discretion of the district court. Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 749 (8th Cir. 2009). "[Supplemental jurisdiction] justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). "Needless decisions of state law should be avoided both as a matter of comity and to promote

justice between the parties, by procuring for them a surer-footed reading of applicable law." Id. If it appears that state issues substantially predominate, courts have tended towards dismissing said state law claims without prejudice, to be left for resolution by the state courts. Id.

Because this Court recommends dismissing all of Plaintiff's federal law claims as alleged against Defendant Chase Bank, at this early stage of this litigation, the Court also recommends declining to exercise supplemental jurisdiction over the two remaining state law breach of contract claims as alleged against Defendant Chase Bank. See, Gregoire v. Class, 236 F.3d 413, 419–20 (8th Cir. 2000) (stating federal courts should exercise judicial restraint and avoid state law issues whenever possible); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).[9]

Therefore, to the extent Defendant's Motion seeks a dismissal with prejudice of Plaintiff's state law claims, the undersigned recommends that Defendant's Motion to Dismiss, [Docket No. 11], be **DENIED**. Instead, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over the two remaining state law breach of contract claims as alleged against Defendant Chase Bank, and those claims be **DISMISSED** without prejudice.

## III. Conclusion

Therefore, based on the foregoing reasons, all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

---

[9] The Court is cognizant of the fact that Plaintiff's federal law claims as alleged against Defendants "Mrs. W. White" and "Alltran Financial LP" remain to be litigated in the present case; however, the undersigned recommends declining to exercise supplemental jurisdiction over Plaintiff's state law claims as alleged against Defendant Chase Bank because the undersigned has recommended that all of Plaintiff's federal law based claims as alleged against Defendant Chase Bank be dismissed. Moreover, although, as previously noted, Plaintiff's Complaint is unclear, it appears that breach of contract claims are alleged against only Defendant Chase Bank. Although Plaintiff discusses Defendants "Mrs. W. White" and "Alltran Financial LP" breaching the alleged "Settlement Offer" that discussion appears to be in the context of alleged FDCPA violations. (See, e.g., Compl., [Docket No. 1], at 42) (alleging that Defendants "Mrs. W. White" and "Alltran Financial LP" breached the "'Settlement Offer' with Plaintiff when they directly contacted Plaintiff's place of employment . . . in violation [of] Plaintiff's rights provided under the Fair Debt Collection Practices Act").

1. Defendant Chase Bank's Motion to Dismiss, [Docket No. 11], be **GRANTED in part and DENIED in part**, as set forth herein;

2. Plaintiff's Count 1 be **DISMSSED with prejudice**;

3. Plaintiff's Count 2 be **DISMSSED without prejudice**;

4. That the Court decline to exercise supplemental jurisdiction and Plaintiff's Count 3 asserting a cause of action sounding in state law as alleged against Defendant Chase Bank be **DISMSSED without prejudice**;

5. Plaintiff's Count 4 be **DISMSSED without prejudice**;

6. Plaintiff's Count 5 be **DISMSSED without prejudice**; and

7. That the Court decline to exercise supplemental jurisdiction and Plaintiff's Count 6 asserting a cause of action sounding in state law as alleged against Defendant Chase Bank be **DISMSSED without prejudice**.

Dated: June 28, 2019

s/Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).